## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

—————————————————————————
)
)
**ROBERT O'CONNELL,**                               )
)
**Plaintiff,**                        )
)
**v.**                          )          **Civil Action No. 15-10096-DJC**
)
)
**MAYOR MARTIN WALSH,**                     )
)
**Defendant.**                     )
)
)
———————————————————————)

## MEMORANDUM AND ORDER

**CASPER, J.**                                                        **December 30, 2015**

### I.    Introduction

Plaintiff Robert O'Connell ("O'Connell") filed this lawsuit challenging certain requirements in the application process for obtaining a license to carry a firearm as a violation of his Second Amendment right.  Defendant Mayor of the City of Boston Martin Walsh ("Walsh") has moved to dismiss O'Connell's claim.  D. 11.  For the reasons discussed below, the Court ALLOWS Walsh's motion to dismiss without prejudice.

### II.    Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court determines if the facts alleged "plausibly narrate a claim for relief."  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (internal citation omitted).  To that end, the Court must conduct a two-step, context-specific inquiry.  See García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court

closely reads the complaint to distinguish the factual allegations from the conclusory legal allegations. <u>Id.</u> Factual allegations must be accepted as true, while conclusory legal conclusions can be disregarded. <u>Id.</u> Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." <u>Haley v. City of Boston</u>, 657 F.3d 39, 46 (1st Cir. 2011). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." <u>García-Catalán</u>, 734 F.3d at 103 (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)).

## III.    Factual Background

The following facts are taken from the complaint, D. 1, and are accepted as true for the purposes of this motion. The factual allegations in O'Connell's complaint consist primarily of a description of the process for obtaining a license to carry a firearm. <u>Id.</u> at 1-2. O'Connell alleges that applying for a license in Boston requires a person to report to Boston Police Headquarters, pay a nonrefundable fee of $100, interview with a police officer, qualify at the Boston Police Department Firearms Range and complete a firearm safety course. <u>Id.</u> at 1, 4. O'Connell characterizes the requirements as "very time consuming thus expensive and hence unacceptable." <u>Id.</u> at 3. O'Connell alleges that "[a]n applicant has to take time off from work." <u>Id.</u> O'Connell states that he wants a firearm for "protection." <u>Id.</u> O'Connell does not allege that he has applied for a license, that any of these requirements hindered him from submitting an application for a license or that he was denied a license. Although the remedy he seeks is a different firearm application process, D. 1 at 4, his claim, in essence, seeks a declaratory judgment that the current process is unconstitutional as he alleges that "[t]he City is placing obstacles, which are burdensome, in a citizen['s] path to exercising their [Second] Amendment right to own a firearm." <u>Id.</u> at 3.

IV.     **Procedural History**

O'Connell instituted this action on January 16, 2015.  D. 1.  Walsh subsequently moved to dismiss.  D. 11.  The Court heard the parties on the pending motion and took the matter under advisement.  D. 15.

V.      **Discussion**

A.      **O'Connell's Claim is Not Ripe**

Walsh challenges O'Connell's standing.  D. 12 at 5-6.  "In general, standing and ripeness inquiries overlap."  McInnis-Misenor v. Maine Med. Ctr., 319 F.3d 63, 69 (1st Cir. 2003).  "The overlap is most apparent in cases that deny standing because an anticipated injury is too remote."  Id.  Because this "case may be resolved based on the prudential aspects of the standing and ripeness doctrines" and "the cases dealing with ripeness present a closer fit" the Court focuses its analysis on ripeness.  Id. at 71.

Ripeness turns upon the existence of "an 'actual' controversy," which "is a *sine qua non* of any assumption of federal jurisdiction."  Verizon New England, Inc., v. Int'l Bhd. of Elec. Workers, Local No. 2322, 651 F.3d 176, 188 (1st Cir. 2011) (internal citation omitted).  The ripeness doctrine guards against "premature adjudication," keeps courts "from entangling themselves in abstract disagreements" and provides courts the "benefit [gained] from a focus sharpened by particular facts" in a fully developed case.  Doe v. Bush, 323 F.3d 133, 138 (1st Cir. 2003) (internal quotation marks and citations omitted).

Ripeness analysis requires an assessment of whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  McInnis-Misenor, 319 F.3d at 70 (internal citation omitted).  In conducting that inquiry, the Court considers 1) fitness for judicial review and 2)

hardship to the parties if judicial review is withheld.  <u>Verizon</u>, 651 F.3d at 188.  The fitness prong is concerned with "questions of finality, definiteness, and the need for further factual development."  <u>Id.</u>  "The critical question [for fitness] . . . is whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all."  <u>McInnis-Misenor,</u> 319 F.3d at 70 (internal citation omitted).  The occurrence of the event at issue is particularly important where the case turns on factual issues that could be "affected by further . . . development."  <u>Id.</u>  The hardship prong examines "the extent to which withholding judgment will impose hardship" and focuses on "whether the challenged action creates a direct and immediate dilemma for the parties."  <u>Id.</u> (internal citation omitted).

O'Connell's failure to apply for a license to carry a firearm renders his claim unripe. First, O'Connell's claim does not meet the fitness requirement of ripeness.  To determine whether the existing regulations constitute an undue burden on O'Connell's Second Amendment rights, the Court needs "further factual development" regarding the manner in which the existing regulations would affect the licensing authority's decision were it to be presented with an application from O'Connell.  <u>Verizon</u>, 651 F.3d at 188.  For the licensing authority to deny any type of license to carry, the licensing authority must "notify the applicant of the reason for such denial in writing."  Mass. Gen. L. c. 140, § 131(e).  Should the licensing authority deny O'Connell a license, then the reasons for denial will be properly subject to judicial review.  <u>See</u> <u>Davis v. Grimes</u>, 9 F. Supp. 3d 12, 16 (D. Mass. 2014) (recognizing that "[l]icensing decisions are subject to judicial review in state [court]").  Since the licensing authority has yet to consider an application from O'Connell, O'Connell's claim is not fit for review.  <u>See</u> <u>Commonwealth v. Powell</u>, 459 Mass. 572, 589-90 (2011) (declining to consider defendant's constitutional challenge to firearm licensing scheme where defendant had not applied for a license to carry a

firearm and noting that if his application had been denied he would have had a right to appeal that decision to a state district court).

At this juncture, the Court need not speculate as to how the licensing authority might respond to a potential application from O'Connell in the future.   See Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 537 (1st Cir. 1995) (explaining that "a court will find ripeness lacking if the anticipated events and injury are simply too remote to justify contemporaneous adjudication").   "[T]hat the [denial of O'Connell's application for a license to carry] may never come to pass augurs against a finding of fitness."   McInnis-Misenor, 319 F.3d at 72.   Accordingly, O'Connell's claim does not meet the fitness requirement of ripeness.

Second, O'Connell's claim fails the hardship requirement of ripeness.   Since O'Connell has not been denied a license, there is no "direct and immediate dilemma for the parties." Verizon, 651 F.3d 176 at 188 (internal quotation marks omitted); see Gun Owners' Action League, Inc. v. Swift, 284 F.3d 198, 207 (1st Cir. 2002) (holding that claim did not satisfy the hardship prong where the firearm statute at issue had not been enforced against plaintiffs and plaintiffs had not applied for a license pursuant to the statute).   Moreover, even if O'Connell has presented a minimal showing of hardship, this Court "do[es] not find sufficient hardship on the part of [O'Connell] to offset [his] weak showing on the fitness prong."   McInnis-Misenor, 319 F.3d at 73.

In light of these well-established requirements for ripeness, O'Connell's argument that his claim should be considered merely because he is a citizen of Boston, D. 13 at 1, is unconvincing.   Moreover, O'Connell's contention that his claim should be considered because "if [he] tried to purchase a gun in a store [he] would be told [he] cannot purchase one without a permit," id. at 1-2, presents precisely the type of "hypothetical" scenario that is "seldom fit for

federal judicial review." Ernst & Young, 45 F.3d at 538.  For these reasons, the Court concludes that O'Connell's claim is not ripe.

### B.   The Mere Existence of a Firearm Licensing Scheme, Without More, Does Not Give Rise to a Claim

To the extent O'Connell intended to argue that the mere existence of regulations on the possession of a firearm is unconstitutional, he has failed to state a claim upon which relief can be granted.  D. 1 at 3.  Although the level of judicial scrutiny Second Amendment claims are entitled is somewhat unsettled,[1] the government's authority to regulate the possession and storing of firearms is well-established as a matter of constitutional law.  See United States v. Rene E., 583 F.3d 8, 12 (1st Cir. 2009) (enumerating several regulations on firearm possession that are "'presumptively lawful'") (citing District of Columbia v. Heller, 554 U.S. 570, 626-27 n.26 (2008)); Powell, 459 Mass. at 589 (acknowledging that "the Second Amendment does not ban all regulation of firearms").  The "rights guaranteed by the Second Amendment [are] 'not unlimited,'" Rene, 583 F.3d at 12, and the Second Amendment "does not imperil every law regulating firearms."  McDonald v. City of Chicago, Ill., 561 U.S. 742, 786 (2010).  Indeed, "some measure of regulation is permissible even in the home."  Holden, 470 Mass. at 857.

It follows that "the requirement of prior approval by a government officer, or a licensing system, does not by itself render [a firearms] statute unconstitutional on its face."  Powell v. Tompkins, 926 F. Supp. 2d 367, 379 (D. Mass. 2013) aff'd, 783 F.3d 332 (1st Cir. 2015) (internal quotation marks omitted) (quoting Commonwealth v. Loadholt, 460 Mass. 723, 726 (2011)); see Commonwealth v. Johnson, 461 Mass. 44, 58 (2011) (rejecting defendant's Second

---

[1] The "law is . . . unsettled as to which standard of scrutiny applies" to Second Amendment claims.  Chief of Police of City of Worcester v. Holden, 470 Mass. 845, 857 (2015); see Hightower v. City of Boston, 822 F. Supp. 2d 38, 62 (D. Mass. 2011) aff'd, 693 F.3d 61 (1st Cir. 2012) (citing United States v. Rene E., 583 F.3d 8, 11 n.4 (1st Cir. 2009) and District of Columbia v. Heller, 554 U.S. 570, 628-29 (2008)).

Amendment challenge where he had not applied for a firearm license because "the requirement of licensing before one may possess a firearm or ammunition does not by itself render the licensing statute unconstitutional on its face").  Furthermore, licensing authorities are granted "broad discretion" in administering licensing decisions.  <u>Holden</u>, 470 Mass. at 854 (internal quotation marks omitted).  O'Connell has failed to plead allegations demonstrating any particular manner in which the Massachusetts statutory scheme, either on its face or as applied by the licensing authority, improperly infringes on his ability to acquire a license to carry a firearm such that the statutory scheme constitutes a violation of the Second Amendment.[2]

## VI.     Conclusion

For the foregoing reasons, the Court ALLOWS Walsh's motion to dismiss without prejudice.  D. 11.

**So Ordered.**

/s/ Denise J. Casper<br>
United States District Judge

---

[2] Walsh argues that O'Connell was required to at least join the Police Commissioner of Boston as a party.  D. 12 at 4.  Having concluded that O'Connell's claim is not ripe, the Court does not need to reach this issue.